John S. Balzano, Esq. Assistant County Attorney, Oneida County
You have asked whether a county is authorized to establish a term of office for the commissioner of health of a part-county health district differing from the term set forth in the Public Health Law. Also, you ask whether there is any statute setting forth the term of office of a public health director appointed under the State Sanitary Code. Your county operates under a charter form of government.
Section 351(1) of the Public Health Law provides for the appointment of a county health commissioner in a county or part-county health district. The health commissioner is to serve for a term of six years (id., § 351[3]). Under the State Sanitary Code, in a county of less than 250,000 population, when not inconsistent with the public health needs of the county as determined by the State Commissioner of Health, a public health director may be employed in lieu of a commissioner of health (10 NYCRR § 11.180). The Sanitary Code also establishes the qualifications of a public health director (id., § 11.182). We have not found any provision of law or regulation establishing a term of office for a public health director. If, in a particular county, the powers and characteristics of the position of director place it in the classified rather than unclassified service (see Civil Service Law, § 35), the director will serve in accordance with the provisions of the Civil Service Law governing the particular classification (§§ 40, et seq.). Otherwise, it will be necessary for the county to establish the tenure in office.
Returning to your first question, in our opinion, a county, through the adoption or revision of a county charter, may establish a term for a county health commissioner differing from the term established by section351(3) of the Public Health Law. Under Article IX, § 1(h) of the State Constitution, counties are authorized to adopt, amend or repeal alternative forms of county government (charters). These provisions of the Constitution have been implemented by the Legislature through the adoption of Article 4 of the Municipal Home Rule Law, referred to as the "County Charter Law". Subject to restrictions in the Constitution, Article 4 or in any other applicable law, a county is empowered to adopt, amend or repeal a county charter setting forth the structure of county government and the manner in which it is to function (Municipal Home Rule Law, Art 4, § 33[1] and [2]). A charter law adopting or amending a county charter need not be consistent with "general state laws". (A general state law is defined as a law which in terms and effect applies alike to all counties or all counties other than those wholly included within a city [NY Const, Art IX, § 3(d)(1); Municipal Home Rule Law, § 2(5)].) Unlike local laws adopted by a local government, which must be consistent with general state laws (NY Const, Art IX, § 2[c]; Municipal Home Rule Law, § 10), neither the Constitution nor the County Charter Law require that charter laws be consistent with general state laws.* The courts have recognized this in upholding the validity of charter laws, which were inconsistent with general state laws (Matter of Smithtown v Howell, 31 N.Y.2d 365 [1972];** Matter ofHeimbach v Mills, 67 A.D.2d 731 [2d Dept, 1979]***).
The County Charter Law establishes certain limitations and restrictions on the power to adopt or amend county charters (Municipal Home Rule Law, Art 4, § 34). A charter law may not supersede certain enumerated general or special laws enacted by the Legislature (id., § 34[3]). This is a further indication that outside of these limitations and restrictions there is no general requirement that a charter law be consistent with all general state laws (Matter of Heimbach v Mills,supra). "If such consistency were generally required, every charter provision would have to conform to every applicable general law and there could never be such a thing as an alternative form of government or effective home rule in the localities" (ibid.). In an opinion of this office, we have indicated that so long as the charter law deals with the structure of county government or the manner in which it is to function, including the details of the administration of county government, it need not be consistent with general state law (Op Atty Gen 82-F15).
In our view, the establishment of the term of a county health commissioner clearly relates to the structure and functions of county government. We have found no restrictions on a charter law establishing a term. Therefore, we believe that a county by charter law adopting or amending a county charter may establish a term for a county health commissioner differing from the term established by the Public Health Law.
In a previous opinion of this office (1974 Op Atty Gen 33, relied upon in 1975 Op Atty Gen 55), we concluded that a charter law may not establish a method of appointment or term for a county health commissioner differing from that set forth in the Public Health Law. We based this opinion upon the requirement in Municipal Home Rule Law, Article 2, § 10 that local laws be consistent with general state laws. However, as we have demonstrated here, it is Article 4 that establishes the scope of a county's charter law power, not Article 2, which deals exclusively with local law power. Under Article 4, in determining the structure and functions of government, a charter law need not be consistent with a general state law. Therefore, our previous opinion is hereby superseded.
We note that our 1974 opinion prompted an amendment to section351 of the Public Health Law providing that the county executive appoints the health commissioner "in those counties where the county charter provides that said commissioner is to be appointed by the county executive" (Bill Jacket, L 1975, ch 83). The Secretary of State urged that the bill was unnecessary since charter counties had the authority to accomplish the purpose by amending their charters (May 1, 1975 memo from Secretary of State Mario Cuomo to Judah Gribetz, Counsel to the Governor). There is some indication that the bill was approved to eliminate uncertainty as to the existence of this authority, while recognizing that it may not have been necessary (May 5, 1975 memorandum from S. Michael Nadel, Assistant Counsel to the Governor to Judah Gribetz, Counsel to the Governor). We do not view the amendment as a restriction on charter powers in this area. By its language, the amendment recognizes that counties through charter law, have established a different appointing authority. The amendment does not authorize this option, but simply certifies that the option exists. In any event, an act of the Legislature would be ineffective to limit the constitutionally derived powers to adopt and amend alternative forms of county government.
We conclude that a county may adopt a charter law establishing a term for the county health commissioner differing from the term established by the Public Health Law.
* It would appear that section 351 of the Public Health Law, in establishing the term of a county health commissioner, is not a general state law. The provision applies to any county having a health district with a commissioner of health. However, as previously noted, in certain counties a public health director may be employed in lieu of a commissioner of health and no term is required by State law for this office. It is not necessary, however, that we reach this question because a charter law can supersede general and special laws.
** Section 239-m of the General Municipal Law by general law provided for a county planning commission to review local zoning actions and if disapproved by the commission, provided for override by the local government by a super-majority vote. The Court of Appeals upheld a charter law vesting the county planning commission with veto power over local zoning actions.
*** The Real Property Tax Law by general law provided for real property tax equalization rates to be set by the board of supervisors. The Appellate Division upheld a charter law vesting this power in the elected county executive.